Statement of the Case.
NICHOLLS, C. J.
On the 21st of December, 1901, letters issued from the civil district court in favor of Rosa Lopez, widow of Nicolas G. Carbajal, as natural tutrix.of the minor children, issue of her marriage with her said husband.
Nicolas G. Lopez had already, under an order of the same court, been appointed undertutor of the children, and he had qualified as such on September 12, 1901.
On May 28, 1902, Mrs. Rosa Lopez filed a petition in which, after describing herself as widow of Nicolas G. Carbajal, and natural tutrix of the minor children, issue of her said marriage (naming them), she averred that it was her wish and intent to contract a second marriage with Francis Martin, and she desired to be retained as natural tutrix of said children; that previous to the celebration of the marriage she desired to convoke a family meeting according to law, in order to be retained as tutrix. She averred that Bernardo G. Carbajal, Nicolas G. Carbajal, and Facundo G. Carbajal (the first being a paternal uncle, and the other two second cousins of the minors) were their only male relatives residing within the circuit prescribed by law; that N. G. Lopez, their maternal uncle, was their undertutor. She suggested that, in default of relatives, Jerome Meunier, Carlos Menandez, Dr. Philip Berge, Jose Venta, J. Barzana, and Manuel Estalotte were friends of the family and of the minors, and suitable persons to compose said family meeting.
In view of tlie premises, she prayed for the convoking and holding of a family meeting in behalf of said minors for the purpose of deliberating, deciding, and advising whether she would be retained as natural tutrix of said minors; that the family meeting be composed of the persons named, or any five of them; and that the undertutor be notified to attend the meeting.
The district judge on the same' day ordered that a family meeting he held, in behalf of the minors, to deliberate and give their opinion and advice on the subject-matter of the petition; the family meeting to be composed of the persons named, or any five of them.
On the 4th of June the family meeting ordered was convened before Jules Meunier, notary public, at which all the parties named appeared, and were duly sworn, and deliberated upop. the matter submitted to them. Jerome Meunier, John Barzana, Dr. Philip Berge, Manuel Estalotte, Jose Venta, and Carlos Menendez declared their opinion to be that the second marriage of the widow with Francis Martin would not be detrimental to the interest of the minors, and they recommended and advised that she remain as their tutrix. Bernardo G. Carbajal, Nicolas G. Carbajal, and Facundo G. Carbajal objected to the widow being retained as tutrix, on the ground that, in their opinion, the interests of the minors would not be well protected. The undertutor concurred in the opinion, and, with the advice of the latter. The notary referred the proceedings to the court.
On the 23d of June, 1902, the tutrix filed a petition reciting the facts, and praying for a rule upon the undertutor and the other mi *947 nority members of the family meeting to show cause why the views of the majority should not be adopted, and the proceedings homologated.
The rule issued as prayed for. Defendants in rule answered, setting up, in detail and at length, their grounds of objection. On a trial of the rule the district court dismissed the oppositions, and approved and homologated the deliberations of the family meeting. Nicolas G. Lopez (individually and in his capacity of undertutor), Bernardo G. Carbajal, Nicolas G. Carbajal, and Facundo G. Carbajal applied for and obtained an appeal to the Supreme Court, which they perfected by giving bond. The transcript of appeal was filed in that court on November 5, 1902.
On the suggestion of Mrs. Nicolas G. Carbajal, natural tutrix of the minors, that Nicolas G. Lopez, undertutor of the minors, died on the 31st of October, 1902, and that no succession representative was appointed to represent him until March 11, 1902, when his widow was appointed and qualified as natural tutrix of the minors, issue of her marriage with him; that the transcript of appeal was filed after the death of the undertutor before any successor was appointed to him, and when there was no representative of said succession, and no one who had the right to perfect and prosecute the appeal; that subsequent to the filing of the transcript Manuel Bornio had beén appointed undertutor of the minor children, issue of the marriage between Nicolas G. Carbajal and herself, and that he had not made himself a party to the appeal; and that it was proper that he should be made such, to determine whether he would prosecute or not the opposition to the homologation of the proceedings of the family meeting which retained her in the tutorship of her children—the court ruled Juana Suarez Lopez, widow of N. G. Lopez, and his minor children, Manuel Bornio, Bernardo G., and Nicolas G. Carbajal, to show cause why the appeal should not be dismissed for want of proper parties, and why such other and further relief should not be granted as might be proper in the premises. Bernardo G. Carbajal, Facundo G. Carbajal, and Nicolas G. Carbajal objected to a consideration of the rule for the reasons:
(1) That the motion to dismiss was informal, and did not comply with the rules of the Supreme Court—particularly rule No. 13 (21 South, xi), in that the necessary affidavit required by said rule was lacking.
(2) That mover had asked for the dismissal of the appeal for want of proper parties, whereas the rules of the court did not contemplate or provide for the dismissal of appeals for that cause.
Under reservation of these objections, they averred that Nicolas G. Lopez had died on the 31st of October, 1902, after the appeal was perfected; that Mrs. Juana Suarez Lopez, widow of Nicolas G. Lopez, tutrix of her minor children, and administratrix of his succession, had made herself a party to the appeal as appellant; that Manuel Bornio, who had been appointed under-tutor of the minor children of Nicolas G. Carbajal 'Since the death of Nicolas G. Lopez, was not a necessary party to the appeal, but, if he was, he should be made a party by order of court. In view of the premises, they prayed that the motion to dismiss the appeal be denied, for the reasons assigned; but, should the court hold that the motion was formal and sufficient and proper, under the rules of the court, then they prayed that the application be denied for the reason that Mrs. Juana Suarez, widow of Nicolas G. Lopez, had voluntarily made herself a party, and Manuel Bornio, undertutor, was not a necessary party. They prayed, in the alternative, should the court hold him to be a necessary party, that he be made a party by such process as might be necessary under the rules of the court.
Mrs. Juana Suarez Lopez, natural tutrix of the minors, issue of her marriage with Nicolas G. Lopez, and administratrix of his succession, appeared, and moved to be made a party to the appeal; praying that the cause be heard and determined according to law. Manuel Bornio, the newly appointed under-tutor of the minor children of Nicolas G. Carbajal, came into court, and joined the appellee, Mrs. Nicolas G. Carbajal, in her prayer for the dismissal of the appeal.
Opinion.
While the proceedings resorted to by appellee in this matter are unusual, they have resulted in all parties being brought before *949 the court, and there is no good reason why the issues raised should not be passed upon. City of Baltimore v. Parlange, 25 La. Ann. 335; Borde v. Erskine, 29 La. Ann. 822.
The position taken by the appellee is substantially that when there is a divergence of ofiinion among the members of a family meeting, as to the interests of minors, upon any given subject submitted to them, and the undertutor agrees with the tutor and the majority in their views, the dissenting-members have no legal capacity to continue their opposition, and take legal steps to test the correctness of their legal conclusions. Her contention is based upon the language of article 277 of the Civil Code, and some expressions made use of by this court in the matter of the Succession of Hebert, 4 La. Ann. 77.
Article 277, referred to, declares that whenever an undertutor shall refuse to approve of the deliberations of a family meeting, or object to their homologation, the court shall decide whether the opposition is well founded, and, if not, the opposition shall be overruled, and the deliberations homologated as if no opposition had taken place, and “when the court shall decide that the opposition of the undertutor is unfounded, and shall homologate the deliberations of the family meeting, the undertutor who shall liave made the opposition shall be exonerated from all responsibility.”
The syllabus in the matter of the Succession of Hebert declares that “when a surviving father claims to have the interests of minor children in property forming part of the community of acquets and gains adjudicated to him, and the adjudication is recommended by a family meeting, the under-tutor alone has a right to oppose it on behalf of the minors. Relations of the minors have no right to interfere in such a case on their behalf. In the event of a collision of interests between the father and natural tutor and the child, the duty of representing the minor is confided to the undertutor.”
In that case the deliberations of the family meeting were opposed by a maternal uncle of the minors. Whether he had been a member of the family meeting, or not, does not appear; nor, if so, does it appear what position he took in the meeting. His grounds of opposition were deemed sufficiently well grounded to have caused the district judge to decline giving his approval to the conclusions of the meeting, and his judgment of refusal so to do was appealed from. This court did not decline to pass upon the issues raised. It- declared that the oppositions ought to have been dismissed for the reason that the allegations were not sustained. It appears that the uncle, in his opposition, 'had charged the father with fraud. The court said there was no ground for the accusation; that it believed the scandal of the suit would do great injury to the minors, and, on a deliberate view of their best interests, it were better that they had been left to the good faith of the father, and to the supervision of the undertutor. The court, however, said it did not undertake to lay down any limit to the discretion of courts in protecting the property of minors from spoliation. The stricture of the court upon the opposition jnade in that particular case was doubtless well grounded, and the suggestion thrown out that, as a general rule, the interests of minors would be best subserved by leaving them in the hands of the undertutor is also doubtless correct; but we cannot afford to lay down as a rule of law that the duty of relatives of minors who have been made members of a family meeting ends with the expression of their views in the meeting. Each case must stand upon its own facts, and members of family meetings who are of the opinion that the object sought to be attained by the deliberations would result in the sacrifice of the pecuniary interests or welfare of the minors are in the line of duty in following their objections. It is often objected that our own system of holding family meetings is utterly useless; that the tutor generally proposes for undertutor some one in sympathy and harmony with his views, and courts make the appointment as a matter of course, without any consideration of his fitness; that the tutor also suggests the names of the friends of the minors who are to serve as members of the family meetings, and those names are judiciously selected so as to further the wishes of the tutor; that these meetings, as a usual thing, act merely as an instrumentality in carrying out the tutor’s wishes. This objection is, to a certain extent, well founded; and, while we should encourage nothing calculated to *951 stir up dissensions in families, we should certainly leave the door open for full and complete investigation. Minors have been called the wards of the court. Article 277 of the Civil Code provides, evidently, for the single case where an undertutor himself disagrees with the views of the family meeting. It authorizes him, under such circumstances, to oppose their confirmation by the district court. It nowhere asserts that parties other than the undertutor may not join him in his opposition, nor that they cannot, by separate and independent action, make separate opposition when the undertutor happens to concur in opinion with the majority of the members of the family meeting. When the undertutor concurs in the dissent of the minority, there is, as a matter of course, no legal necessity for all the minority members to unite in opposing an homologation, for the undertutor would then singly represent the entire opposition. That fact, however, as we have said, would not do away with the right of the individual members to unite with him in his opposition. That was the precise situation here. All the opposing members joined the undertutor in the opposition and in the appeal. The undertutor did not die until after the jurisdiction of this court over the appeal had attached. As tutorship and undertutorship are personal trusts (Civ. Code, art. 315), they do not descend to the heirs of either, though the heirs of the tutor are, under some circumstances, and to some extent, responsible for the administration of the tutorship. We presume the heirs of the' deceased undertutor were made parties to this appeal through fear of some ultimate liability. When the undertutor died, his official connection with this appeal died, but his opposition, none the less, remained standing. His successor could, of course, decline to prosecute the appeal, or join with the appellee in resisting the opposition; but his doing so would not carry with it, as a result, the failure of the appeal of the other opposing members of the family meeting. Appellee, having herself ruled those opponents to show cause, is not in position to deny their legal capacity as defendants. Rouge v. Lafargue, 47 La. Ann. 1649, 18 South. 652.
The action taken by the new undertutor does not change the fact that the former undertutor, under a sense of his official duty, appealed from the judgment of the district court. It is our duty to examine into the merits of the case. The application to dismiss the appeal is denied. The appeal is maintained.